# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT KNOXVILLE

## STATE OF TENNESSEE v. ZACHARY THOMAS HAYS

**Criminal Court for Knox County**
**No. 125889**

_____

**No. E2025-01324-CCA-R9-CD**

_____

## ORDER

The Defendant has filed an application for interlocutory appeal, *see* Tennessee Rules of Appellate Procedure 9, seeking review of the trial court's February 14, 2025 order denying his motion to dismiss a presentment charging him with aggravated stalking. *See* Tenn. Code Ann. § 39-17-315 (2023). The Defendant asserts that interlocutory review of the trial court's order is required to prevent irreparable injury to the Defendant; to prevent needless, expensive, and protracted litigation; and to develop a uniform body of law. Tenn. R. App. P. 9(a)(1), (2), and (3). The State has filed an answer in opposition to the Defendant's application. Following our review, the Defendant's application for interlocutory appeal is DENIED.

## FACTUAL BACKGROUND

On September 14, 2023, the Defendant was charged via presentment with one count of aggravated stalking, alleging that, "between March 2023 and July 2023," the Defendant "did unlawfully and intentionally stalk [the victim] while [he] was prohibited by [a] court ordered restraining order from making contact with [the victim]."[1] On October 3, 2024,

---

[1] Tennessee Code Annotated section 39-17-315 (2023) defines stalking as "a willful course of conduct involving repeated or continuing harassment of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Tenn. Code Ann. § 39-17-315(a)(4). "Course of conduct" is defined as "a pattern of conduct composed of a series of two (2) or more separate, noncontinuous acts evidencing a continuity of purpose, including, but not limited to, acts in which the defendant directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to a person, or interferes with a person's property." Tenn. Code Ann. § 39-17-315(a)(2). Harassment is defined as "conduct directed toward a victim that includes, but is not limited to, repeated or continuing unconsented contact that would cause a reasonable person to suffer emotional distress, and that actually causes the victim to suffer

the Defendant filed a motion to dismiss the presentment, asserting that Tennessee's 2023 aggravated stalking statute is unconstitutional. The Defendant specifically argued that the 2023 version of the aggravated stalking statute violates the First Amendment because the statute does not require proof of a defendant's understanding that his or her conduct is threatening and only imposes an objective standard that a reasonable person would feel threatened by the defendant's statement. *See Counterman v. Colorado*, 600 U.S. 66 (2023).[2]

Following a hearing on the motion to dismiss, the trial court entered an order denying the Defendant's motion to dismiss.[3] In so doing, the trial court distinguished Tennessee's statute from the Colorado statute analyzed in *Counterman*, noting that

> Unlike its counterpart from Colorado, § 39-17-315 of our Code requires a culpable mental state which does not run afoul of the pronouncement in *Counterman*. The Tennessee statute requires the state prove a defendant acted "willfully" and with a "continuity of purpose," thusly requiring the state to prove the defendant's subjective intent. Moreover, the statute is conjunctively framed, thereby, requiring the state to not only prove the defendant's willfulness, but the objective harm such activity could/did cause to/upon the victim.
>
> . . . .

---

emotional distress." Tenn. Code Ann. § 39-17-315(a)(3). As relevant to this case, aggravated stalking may be established when a person commits the offense of stalking and "[a]t the time of the offense, [the person] was prohibited from making contact with the victim under an . . . order of protection . . . and the person knowingly violates the . . . order." Tenn. Code Ann. § 39-17-315(c)(1)(E).

[2] In *Counterman v. Colorado*, the Supreme Court analyzed Colorado's stalking statute that made it unlawful to "[r]epeatedly . . . make[ ] any form of communication with another person' in "a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . to suffer serious emotional distress." Colo. Rev. Stat. § 18-3-602(1)(c). The Court held that, in a criminal prosecution, the First Amendment requires some proof of a defendant's subjective understanding of his statements' threatening nature and that a recklessness *mens rea* is sufficient to establish that understanding. *Counterman*, 680 U.S. at 78-82.

The Defendant noted in his motion to dismiss that the legislature amended the statute in 2024 by revising the definition of harassment to include a subjective *mens rea* that a defendant act "with reckless disregard for whether the victim will suffer emotional distress as a result of the conduct." Tenn. Code Ann. § 39-17-315(a)(3)(A)(ii) (2024).

[3] As will be further discussed, the trial court entered an order on December 3, 2024, denying the motion to dismiss. Later, on February 14, 2025, the trial court entered a superseding order that incorporated the findings and conclusions from the December 3, 2024 order.

The Defendant is correct in his assertion that the Colorado statute and [] § 39-17-315 bear a number of striking similarities. His argument, however, omits the critical distinctions that allow the Tennessee statute to survive constitutional scrutiny post[-]*Counterman*. In this State in order to sustain a stalking prosecution the State must prove not only whether or not a reasonable person would be impacted by a defendant's activity, but must also prove that the defendant's action(s) were willful and harassing.

On February 25, 2025, the Defendant filed a motion in the trial court seeking interlocutory review. Tenn. R. App. P. 9(b). As grounds, the Defendant argued that interlocutory review was necessary to prevent irreparable injury, *see id*. 9(a)(1), in that proceeding to trial would result in (1) a negative and significant financial impact associated with his traveling from out of state to defend himself at trial, (2) an exacerbation of his "significant mental health conditions," and (3) the risk of incarceration if convicted at trial.[4] The Defendant also argued that interlocutory review would prevent needless, expensive, and protracted litigation and would further the development of a uniform body of law. *See id*. 9(a)(2) and (3).

On August 22, 2025, the trial court granted the Defendant's motion for interlocutory review. The trial court determined that interlocutory review was necessary to prevent irreparable injury to the Defendant with consideration of the Defendant's residing in Texas and suffering from extensive mental health conditions. *Id*. 9(a)(1). The trial court also found that interlocutory appeal would prevent needless, expensive, and protracted litigation because, if the court had erred in denying the motion to dismiss, a trial would be avoided. Id. 9(a)(2). Finally, the trial court found that "appellate interpretation is needed to develop a uniform body of law to clarify whether the Tennessee stalking statute in place at the time of the Defendant's presentment violates First Amendment protections." *Id*. 9(a)(3). In so doing, the trial court certified the following issue for review:

> Whether Tennessee Code Annotated section 39-17-315 (2023) criminalize[s] protected speech in violation of the First Amendment of the United States Constitution and [the Supreme Court's holding in] *Counterman v. Colorado*, 600 U.S. 66 (2023)?

The Defendant has filed an application from the trial court's order granting interlocutory review. Tenn. R. App. P. 9(c). The State has filed a timely answer in opposition to the

---

[4] Only for the limited purpose of establishing a basis for interlocutory review, the parties stipulated that expert testimony and medical records would establish that the Defendant has been diagnosed with schizoaffective disorder and that "continued litigation in this case would negatively impact the Defendant and his mental health."

application. The application and attachments thereto are sufficient for this court's review. *Id*. 9(a).

## ANALYSIS

Rule 9(a) provides the following criteria for determining whether to grant interlocutory appeal:

> (1)    the need to prevent irreparable injury, giving consideration to the severity of the potential injury, the probability of its occurrence, and the probability that review upon entry of final judgment will be ineffective;
>
> (2)    the need to prevent needless, expensive, and protracted litigation, giving consideration to whether the challenged order would be a basis for reversal upon entry of a final judgment, the probability of reversal, and whether an interlocutory appeal will result in a net reduction in the duration and expense of the litigation if the challenged order is reversed; and
>
> (3)    the need to develop a uniform body of law, giving consideration to the existence of inconsistent orders of other courts and whether the question presented by the challenged order will not otherwise be reviewable upon entry of final judgment.

*Id*. 9(a)(1)-(3).

"An interlocutory appeal is an exception to the general rule that requires a final judgment before a party may appeal as of right." *State v. Gilley*, 173 S.W.3d 1, 5 (Tenn. 2005). To that end, the Tennessee Supreme Court has stated repeatedly that "interlocutory appeals to review pretrial orders or rulings, i.e., those entered before a final judgment, are 'disfavored,' particularly in criminal cases." *Id.*; *see also State v. Meeks*, 262 S.W.3d 710, 720 (Tenn. 2008); *State v. McKim*, 215 S.W.3d 781, 790 (Tenn. 2007); *State v. Scarborough*, 201 S.W.3d 607, 612 n.2 (Tenn. 2006); *Reid v. State*, 197 S.W.3d 694, 699 (Tenn. 2006); *State v. Williams*, 193 S.W.3d 502, 506 (Tenn. 2006). "[T]hus, it is incumbent on the party seeking the appeal . . . to satisfy the court or courts that there are appropriate grounds for an interlocutory appeal." *Meeks*, 262 S.W.3d at 720.

In the application before the court, the Defendant maintains the same arguments in favor of interlocutory review as he presented in the trial court: to prevent irreparable injury, prevent needless litigation, and develop a uniform body of law. Tenn. R. App. P. 9(a)(1), (2), and (3). In response, the State urges this court to deny the Defendant's application, arguing that the Defendant failed to file a timely motion for interlocutory review from the

trial court's December 3, 2024 order denying the motion to dismiss. On the merits of the application, the State argues that the application for interlocutory appeal should be denied because "the constitutional issue presented can and should only be reviewed by this Court after any final judgment of conviction" and that "[d]eferring review until necessary after final judgment will not cause irrevocable harm and will instead prevent needless, expensive, and protracted litigation."

As to the State's procedural argument, the court observes that the trial court's February 14, 2024 superseding order indicates that it was entered "with the specific intent to permit the defendant to timely file a request seeking interlocutory review." Tennessee Rule of Appellate Procedure 9(b) states that "[t]he party seeking the appeal must file and serve a motion requesting such relief within 30 days after the date of entry of the order appealed from." *Id*. 9(b). This court in no way condones the use of a superseding order to "reset" the time for filing a motion for interlocutory review. We also note, however, that the failure to timely file a motion seeking interlocutory review is not always fatal to this court's consideration of an application because the timely filing requirement of Rule 9(b)—as well as the timely filing requirement of Rule 9(c) relative to an application to this court—may be suspended for good cause in this court's discretion. *Id*. 2. That said, the Defendant has not responded to the State's procedural argument asking this court to suspend the timely filing requirements.

Regardless, we determine that good cause cannot be established to suspend the timely filing requirements of Rule 9 when, as in this case, the Defendant failed to establish the necessity for interlocutory review. First, any issue surrounding the trial court's denial of the Defendant's motion to dismiss the presentment can be easily reviewed on direct appeal via either a certified question following a guilty plea or following a conviction at trial. *See*, *e.g.*, *State v. McMillan*, No. E2025-00091-CCA-R9-CO (Tenn. Crim. App. Feb. 28, 2025) (Order) (application for interlocutory appeal denied where Defendant challenged the trial court's denial of a motion to dismiss indictment in which the Defendant argued the felon in possession of a firearm statute violates his Second Amendment rights as applied to him). Likewise, we agree with the State that an interlocutory appeal would extend the litigation in this case rather than prevent needless litigation. Further, the Defendant will not suffer irreparable harm without interlocutory review. The inherent negative impact of proceeding to trial—whether psychological or financial—exists in any criminal prosecution. Granting interlocutory review on this basis would negate the long-standing principle that interlocutory appeals are "disfavored" in criminal cases. *Gilley*, 173 S.W.3d at 5. Moreover, there is no need to develop a uniform body of law as this case presents an issue of first impression for Tennessee courts.

**CONCLUSION**

Accordingly, the Defendant's application for permission to appeal pursuant to Rule 9 of the Rules of Appellate Procedure is DENIED. The costs associated with this proceeding are taxed to the Defendant, Zachary Thomas Hays, for which let execution issue, if necessary.

JUDGE STEVEN W. SWORD
JUDGE ROBERT H. MONTGOMERY, JR.
JUDGE KYLE A. HIXSON